IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-00620-LTB

MACHELLE PACHECO,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

---

ORDER

---

Plaintiff, Machelle Pacheco, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the Commissioner's final order and I REMAND for additional proceedings.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her applications for disability insurance benefits and for supplemental security income filed on May 2, 2008. [Administrative Record ("AR") 137, 144] After the applications were initially denied on July 21, 2008, an Administrative Law Judge ("ALJ") conducted an evidentiary hearing on August 18,

2010, and issued a written ruling on November 22, 2010. [AR 17-35, 37-75, 77-8] The ALJ denied her applications on the basis that she was not disabled because Plaintiff had the physical residual functional capacity ("RFC") to perform her past relevant work (Step Four). [AR 29] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1] *See* 20 C.F.R. § 416.1481. Plaintiff timely filed her complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on January 24, 1960, was 50 at the time of the ALJ's hearing, and had obtained a high school education via G.E.D. [AR 43, 147] Her past relevant work history was as a freight inspector, janitor, machine operator, meat cutter, nurse, and scale operator. [AR 177] In her applications, Plaintiff alleged she became disabled on August 1, 2004. [AR 134, 176] However, at the hearing before the ALJ, Plaintiff amended her alleged onset disability date to Februrary 20, 2008, as the date when she sustained a hip fracture. [AR 20, 39]

The medical records prior to February of 2008, reveal normal physical examinations, with normal range of motion, gait, motor, neurological, and sensory functioning. [AR 220, 224, 230-31, 234, 241] On February 19, 2008, Plaintiff went to the emergency room at North Colorado Medical Center after she was tackled and landed on her left hip. [AR 244] Subsequent diagnostic tests established a left hip fracture and a minimal degree of degenerative disease of both hips with a small bony fragment that "could be producing compression on the sciatic nerve." [AR 256] Plaintiff remained ambulatory, and a physical examination revealed normal neurological functioning and range of motion for her neck and extremities. [AR 244-45]

Thereafter, Plaintiff followed up with Dr. John Volk, who noted on February 28, 2008, that the pain medications and cane were helping, and that Plaintiff did not need a walker. [AR 291-92]

Two months later, in April 2008, Plaintiff reported to Dr. Volk that she was doing better with her hip fracture, though she had some sciatic pain on her rightside. [AR 299] Upon examination, Dr. Volk noted that Plaintiff had normal hip range of motion and strength, and that the exam was otherwise unremarkable, opining that her right-sided pain was likely compensatory to her left-sided injury. [AR 300] During her June 2008 visit, Dr. Volk noted that Plaintiff was doing well and that her gait was normalizing, though she continued to have right-sided pain. [AR 301] Diagnostic testing at that time revealed varying degrees of degeneration in Plaintiff's lower back and hips. [AR 307-08] Specifically, the scan showed that disc bulge and annular tear at T12-L1 and L1-2, and "severe disk desiccation" at L2-3. [AR 305] The imaging revealed bulging disc that encroached on the neural foramina at L3-4, and a prominent disc osteophyte that encroached on both neural foramina and contacted nerve roots at L4-5. [AR 306] Finally, at L5-S1, the scan showed "severe bilateral facet arthropathy" with the foramina narrowing to nerve root contact. [AR 307] An MRI of the pelvis on the same date showed a nondisplaced left acetabular roof fracture, mild degenerative changes of both joints and again noted Plaintiff's bilateral sacral fractures. [AR 308]

Later that month, on June 28, 2008, Plaintiff went to the emergency room at North Colorado Medical Center for pain in her lower back through her pelvis with right sciatica. [AR 334] Her physical examination was mostly normal, and the hospital staff noted that she arrived "with a steady gait" and was able to walk without assistance. [AR 335-37] In August 2008, Plaintiff went to the emergency room again, complaining of anxiety because "she lost her

medications about 5 days ago," and her primary care physician would not refill prescriptions until a specific assigned date. [AR 425] Plaintiff's "drug seeking and abuse [history]" is well documented in the records, commencing with a hospitalization in March 2004 for an alcohol and muscle relaxant overdose, and a doctor's note that "[u]se of any narcotic pain medication will likely lead to abuse in this patient." [AR 220-21, 246] This visit resulted in "arrangements for [Plaintiff] to go to Island Grove for detox and her depression/anxiety." [AR 431]

The record shows that Plaintiff saw a physical therapist for evaluation on August 28, 2008, who noted impairment in active range of motion and some difficulties with gait, but ultimately assessed an "excellent" prognosis with further treatment. [AR 398-400] However, Plaintiff failed to follow up with her physical therapist. [AR 401-02] In September 2008, Plaintiff complained to Dr. Volk of increased pain after "watching all four grand kids" and during an October 2008 visit, her physical examination was unremarkable, with normal range of motion, and motor and sensory functioning. [AR 312, 340, 403]

On November 3, 2008, Plaintiff was taken to the emergency room following a car accident in which she was a passenger and was thrown into a ditch. [AR 351-54]. Diagnostic testing at that time revealed "moderately severe degenerative changes" in the mid and lower cervical levels, as well as spondylotic spurring and significant facet arthropathy, but no acute fractures. [AR 392]

In December 2008, Dr. Volk diagnosed Plaintiff with degenerative joint disease of the left knee with loose bodies. [AR 599-605] Dr. Volk noted that she was taking ibuprofen for the pain and it was helping, though she was taking more than suggested. [AR 318] In April 2009, Plaintiff asked Dr. Volk to prescribe an increased dose of a prescription pain medicine, but

agreed to not pursue an increase after he expressed concern that "[t]his means she is developing tolerance of the narcotics." [AR 330-31] Then, in July of 2009, Plaintiff was admitted to the emergency room at North Colorado Medical Center after overdosing on prescription drugs and alcohol. [AR 444] The hospital noted Plaintiff's "[l]ongstanding history of polysubstance abuse and chronic pain syndrome." On physical exam, Plaintiff demonstrated a full range of motion in her neck and back, normal extremities, good strength, a steady, non antalgic gait, and no atrophy in her hands. [AR 444-46, 451, 457]

On January 10, 2010, Plaintiff was in a second car accident as a passenger, and was taken to the emergency room at North Colorado Medical Center. [AR 537] Diagnostic exams established moderate to marked degenerative changes in her left hip, neck, and her left knee, and a fracture in her left leg. [AR 587-94] On January 21, 2010, Plaintiff returned to the emergency room, this time at Poudre Valley, because of severe left knee pain. [AR 515-16] Hospital staff observed that while Plaintiff had a slow, steady gait with a cane, she was able to "move turning self side to side in bed and move self up in bed without difficulty or moaning." [AR 529] MRIs of her left knee revealed a ruptured anterior and posterior cruciate ligaments and a fracture of the tip of the right fibular head with "extensive posterolateral edema." [AR 516, 533] During this hospitalization, Plaintiff reported taking a friend's prescription pain medication, and complained that she could not get her own pain medications for another week from her clinic. [AR 529]

Plaintiff then saw Dr. Mark McFerran, an orthopedic surgeon, for consultation about her left knee pain in February of 2010. [AR 534] After an exam showed old arthritis and a new PCL tear, Dr. McFerran opined that Plaintiff would eventually need a total knee replacement, but he concluded that "I do not think I would do anything today. I think she just needs time, Advil or

Aleve and gentle range of motion on her own to get the knee back and to recover from her [ligament] tear. . . . as s]tructurally, the knee is intact." [AR 534] In March 2010, Plaintiff saw a different orthopedist, Dr. Stewart K. Weinerman, who noted that MRI findings and examination showed left knee effusion and obvious laxity. Dr. Weinerman expressed his concern about the severity of Plaintiff's knee injury, and suggested several different options to stabilize her knee, including surgery. Dr. Weinerman noted that it is possible Plaintiff would need a total knee replacement. [AR 536]

During this time, Plaintiff continued to see Dr. Volk for management of her pain medications. In January 2010, Dr. Volk filled out a Med-9 Form – in conjunction with Colorado's state program for disability – and, without any reference to symptoms, diagnoses, objective medical evidence, or limitations, he checked the box indicating that he found Plaintiff to be disabled. [AR 620] Plaintiff saw Dr. Volk reporting slow improvement in February 2010. [AR 574]

In June 2010, Plaintiff reported to the emergency room at Poudre Valley, complaining of leg pain and stating that she had missed three recent appointments at the clinic which administered her pain medications. [AR 613] Plaintiff admitted to the attending doctor that she went to the clinic "1-2 weeks ago, and she received medicines, but states that she will not be given anymore medicines through them until approximately 2 weeks" later. [AR 613-14] After a physical exam yielded normal results, the doctor "discussed with her the real reason that she was here," which she admitted was "for pain medicines." Because "there is no specific source for her continued pain, [w]e discussed possibly that this is a narcotic dependence type issue." [AR 614]

In July 2010, Plaintiff reported to the emergency room at North Colorado Medical Center, and was admitted to the hospital for four days with nausea and vomiting. During this hospitalization, a physical examination yielded normal results and good strength, and hospital staff report that Plaintiff "states she has a good back and neck." [AR 641-43]

At the hearing in August 2010, Plaintiff testified about the pain in her left hip that radiated down her whole leg and into her lower back, indicating it was a 6 or 7 on a scale of 1-10. [AR 45-51] She also testified about the pain in her knee at about the same level. [AR 51-4] Because of her pain, Plaintiff reported a very limited/sedentary lifestyle with limitations in her ability to sleep, sit (3 hours at a time with ½ hour breaks), stand (2 hours total, in an 8 hour work day, for ½ hour at a time), walk (for 20 feet, with help, using a cane, for ½ hour total in an 8 hour day), lift (cannot lift 20-25 pounds), bend (cannot bend at knees) and balance (when her knee gives out). [AR 56-61, 71-73] She also testified about limitations on her ability to drive, cook, clean and shop. [AR 67-69] The ALJ also took testimony from a psychological expert. [AR 40-2] After the administrative hearing, the ALJ sent interrogatories to Dr. William Clayton, an orthopedic specialist and non-examining medical expert. [AR 688-98] Dr. Clayton responded, on September 1, 2010, that Plaintiff's medical record gave him a poor idea of her long-term physical limitations since she had seen orthopedic specialists for her knee, but had not followed up regarding her knee, or alleged back, neck, lumbar, or hip pain. [AR 689] Dr. Clayton was unwilling to speculate as to Plaintiff's residual functional capacity (RFC). [AR 691]

After the ALJ ruled the Plaintiff was not disabled based on the foregoing, Michael Bates, a physical therapist, performed a Functional Capacity for the State of Colorado, dated May 25, 2011. [AR 750-61] Mr. Bates concluded that Plaintiff "demonstrated the ability to function in

the sedentary Physical Demand Category," in that she could "occasionally lift up to 10 lbs floor to waist, 10 lbs. waist to shoulder, carry up to 5 lbs. single handed." Furthermore, "[d]eficits identified during testing include: Inability to crouch, kneel, crawl, and climb stairs without bilateral upper extremity support. Limited ability to stoop and stand decreased balance that affects her ability to walk, and reach to floor level. Decreased tolerance to activities involving the left hand secondary to carpal tunnel syndrome." [AR 750]

## II. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the

impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

**IV. ALJ's RULING**

The ALJ ruled that Plaintiff had met the insured status requirement of the SAA through December 31, 2009, and that she had not engaged in substantial gainful activity since February 20, 2008, the alleged onset date (Step One). [AR 22] The ALJ further determined that Plaintiff had the severe impairments of a history of left hip fracture, left knee disruption, degenerative disk disease of the lumbar spine, and cervical degenerative disk disease with nerve root impingement (Step Two), but that these impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 22-24] The ALJ then determined that Plaintiff had the RFC to perform the full range of light work. [AR 24] As such, the ALJ found that Plaintiff was capable of performing her past relevant work as a loading inspector, a wire machine operator, and a tallier (Step Four). [AR 20] The ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and, therefore, was not under disability as defined by the SSA. [AR 29-30]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

On appeal, Plaintiff first argues that although the Appeals Council indicated that it considered the RFC evaluation performed by the physical therapist in May of 2011, after the ALJ's decision was issued, as additional evidence in her case, it's failure to evaluate or discuss

the evidence in the record constitutes error. Because the case law in the Tenth Circuit related to whether the Appeals Council must demonstrate analysis of the new information is not clear or settled, I will remand the matter back to the Commissioner for reconsideration of the new evidence.

As an initial matter, Plaintiff argues that although additional evidence must meet three criteria in order to be considered by the Appeals Council pursuant to 20 C.F.R. § 404.970(b) and §416.1470(b) – in that it must be new, material, and relate to the period on or before the date of the ALJ's decision – such determination is not necessary here because the Appeals Council specifically accepted it which, in turn, implies that it is "qualifying new evidence requiring the Appeals Council to consider it and this court to include it in our review of the decision, without separate consideration of the requirements for qualification." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2010)(quotations omitted); *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). The Commissioner, in its briefing, does not challenge this assertion, nor does it argue that analysis of the three criteria for consideration of new evidence is applicable under these circumstances.

Rather, the Commissioner asserts that the Appeals Council is not obligated to articulate the basis for its denial of review, as it has no statutory, regulatory, or judicial obligation to specifically discuss its rationale concerning new evidence submitted to it. The Commissioner relies upon *Martinez v. Barnhart*, *supra*, 444 F.3d at 1207-08, in which the Tenth Circuit rejected the claimant's contention that the Appeal Council erred by failing to specifically address the effect of new evidence on the ALJ's decision, on the basis that "[w]hile an express analysis of the Appeals Council's determination would have been helpful for purposes of judicial review,

[the claimant] points to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review." *Id.; see also Martinez v. Astrue*, 389 Fed.Appx. 866, 868-69, 2010 WL 3010350 (10th Cir. 2010)(not selected for publication)(*comparing Martinez v. Barnhart, supra,* which noted that analysis of new evidence by the Appeals Council was not required; *with Threet v. Barnhart,* 353 F.3d 1185, 1191-922 (10th Cir. 2003), which remanded when the Appeals Council gave no indication that it considered qualifying new evidence). The Commissioner further asserts that after an Appeals Council denies review, it is the ALJ's decision (not the Appeals Council's denial notice) that becomes the final decision of the Commissioner, and is the decision that is subject to judicial review pursuant to 20 C.F.R. § 422.210(a). Thus, the Commissioner argues that the Appeal Council's failure to *specifically* discuss the new RFC evaluation, performed by the physical therapist in May of 2011, cannot constitute error.

Plaintiff, in contrast, refers me to *Harper v. Astrue,* 428 F. App'x 823, 2011 WL 2580336 (10th Cir. 2011)(not selected for publication), in which Tenth Circuit – in an unpublished opinion – ruled that the Appeals Council is required to explicitly discuss new evidence in its denial for review. In that case, the Appeals Council was provided with additional treatment records and opinion evidence from the claimant's treating physician, which it explicitly made part of the administrative record, but then merely stated that the new evidence "does not provide a basis for changing the [ALJ's] decision." *Id.* Because both the ALJ and the Appeals Council failed to conduct any treating physician analysis, the case was remanded for further proceedings since the treating physician "imposed significant restrictions on [the claimant's] ability to work that were never discussed by either the ALJ or the Appeals Council."

*Id.;see also Gaskell v. Astrue*; 2011 WL 4383103 (D.Colo. 2011)(not reported in F.Supp.2d)(ruling that the Appeals Council's incorporation of new evidence into the record, without explicitly discussing it, constituted error which required remand).

Although the rulings relied upon by Plaintiff are unpublished, because they are new precedent and it appears as though the question is still unsettled, I err on the side of caution and remand the matter to the Appeals Council to either address the additional evidence submitted, or remand to the ALJ for such analysis. *See Stills v. Astrue*, 476 Fed. App'x. 159, 161-62 FN.1, 2012 WL 1259062 (10th Cir. 2012)(not selected for publication)(noting that whether treating physician analysis is required when a treating physician's opinion is submitted to the Appeals Council as additional evidence is an issue that "does not appear to be settled in this circuit") (*comparing Harper v. Astrue, supra, with Robinson v. Astrue*, 397 Fed. App'x. 430 (10th Cir. 2010), which required no further specific consideration of treating physician's physical RFC questionnaire submitted to Appeals Council and made part of record where Appeals Council stated it had reviewed RFC questionnaire and that it provided no basis for changing the ALJ's decision).

ACCORDINGLY, for the foregoing reasons, I REVERSE the Commissioner's final order, and I REMAND the matter to the Commissioner for further proceedings consistent with this order and judgment.

Dated: May 14, 2013 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE